NOT DESIGNATED FOR PUBLICATION

No. 115,150
No. 115,151

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMIE M. BOWMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed April 28, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*:  This appeal brings to us the question of the district court's jurisdiction in sentencing a defendant, who is before the court on a detainer from another jurisdiction, to serve her Kansas sentence after completing her sentence in the other jurisdiction. The question arises because of the Kansas sentencing court's use of the term "detainer" in referring to the defendant's sentence in the other jurisdiction. A detailed history of the legal proceedings should bring the issue into focus.

1

*History of Proceedings*

On November 8, 2006, Jamie M. Bowman was sentenced to prison in Missouri for a forgery conviction.

The following month, on December 5, 2006, Bowman was charged in Johnson County, Kansas, with two counts of forgery for passing stolen checks on two different occasions in March 2006.

Then, on December 28, 2006, Bowman signed an Interstate Agreement on Detainers Form II in which she notified Johnson County District Attorney Paul Morrison that she was in the women's prison in Vandalia, Missouri. She requested that "final disposition be made" on the two forgery counts pending against her in Kansas. She agreed to be returned to Kansas for those proceedings and then "to be returned to the institution in which I now am confined."

On January 2, 2007, the Missouri prison warden sent to Kansas a Certificate of Inmate Status Form III showing that Bowman was confined for a forgery conviction and her remaining time for serving her sentence in prison was until April 2009; but that her first possible parole hearing would be on February 7, 2007. The Missouri prison warden also sent Form IV in which the warden offered to deliver temporary custody of Bowman to Johnson County for prosecution of the Kansas case.

On May 2, 2007, after Bowman had been returned to Kansas, she and the State entered into a plea agreement regarding the Kansas charges. Bowman agreed to plead to one count of forgery and the State would dismiss the other forgery charge and recommend probation. Bowman entered her plea in accordance with the plea agreement.

At Bowman's sentencing hearing in June 2007, the court sentenced her to probation for 18 months, with an underlying prison sentence of 17 months. The sentencing court noted Bowman's current imprisonment in Missouri.

> "She is here, as the Court is aware, on detainer out of the Missouri Department of Corrections that was filed in this case; however, she is to be paroled out of the Missouri Department of Corrections in August. So she should be able to be paroled out there and begin probation here.
>
> . . . .
>
> ". . . Probation is granted for a term of 18 months for intensive supervision by Community Corrections not to commence until the Missouri detainer has been fulfilled."

December 22, 2008, is the date that Bowman will later contend ended her 18-month probation; a contention we will discuss later in connection with Bowman's July 2015 motion to dismiss probation revocation proceedings and new charges against her.

In May 2009, Bowman was released from Missouri and started serving her 18-month term of probation in Kansas.

In January 2010, the State moved to revoke Bowman's probation. There was no hearing on the motion until February 2011 due to Bowman's failure to appear at earlier settings. Bowman was arrested on January 1, 2011, and the revocation hearing took place on February 18, 2011. At that hearing, Bowman stipulated to having violated probation, and the court revoked and then reinstated her probation for an additional 18 months. She was ordered to serve probation in the Residential Center.

In March 2011, the State again moved to revoke Bowman's probation, this time because she failed to report to the Residential Center as ordered, apparently because she was "taking care of a detainer in Missouri." Bowman was arrested 1 week later.

3

At Bowman's second revocation hearing in April 2011, her probation was revoked and reinstated for an additional 12 months.

In June 2011, Bowman left the Residential Center to go to Truman Hospital in Kansas City, Missouri. She failed to return. Accordingly, the State initiated a third probation revocation proceeding and charged Bowman with felony aggravated escape from custody.

It was not until 4 years later, in June 2015, that Bowman was arrested on warrants for her latest probation violation and the new crime of aggravated escape from custody.

The following month, in July 2015, Bowman moved to dismiss both the State's motion to revoke her probation and the aggravated escape from custody charge. She argued that the district court had no authority to impose a probation sentence that was to commence on an undetermined future date or based on the completion of other events. Thus, she contended, her probation started on the day she was sentenced and ended in December 2008 and the district court did not have jurisdiction after that. Accordingly, the district court had no authority to send her to the Residential Center after December 2008 and she could not have escaped from custody because she was no longer in lawful custody.

On July 29, 2015, the district court held a preliminary hearing on Bowman's new charge of aggravated escape from custody. Bowman was bound over for trial on that charge, and the court denied both of her motions to dismiss, finding that Bowman could not have started her Kansas probation while she was in prison in Missouri. The court stated:

> "The defendant was there for sentencing. She understood the plea agreement. She understood when she would begin probation.

4

"She knew at that moment when she would be placed on probation that it would begin when she was done with Missouri. That was really the only option other than serving her time. She couldn't begin her probation while in custody in Missouri.

"I believe that was the intent of the parties in this agreement. It was Judge Ruddick's intent [to] give her an opportunity on probation, and the State would stand by its plea agreement, allow her probation when she returned, and she did and she began probation."

In September 2015, the court held a bench trial on stipulated facts on Bowman's aggravated escape from custody charge. Bowman renewed her jurisdictional arguments, which the court again rejected. Bowman was found guilty based on the following stipulated facts: (1) Bowman "was in the custody of the Johnson County (Kansas) Adult Residential Center as a condition of her probation in case number 06CR3463" on June 3, 2011; (2) Bowman left the residential center to travel to "Truman Medical Center, UHaul and Elite Financial Services" and was to return the same day at 7:30 pm; (3) that afternoon the staff at the residential center "received information that [Bowman] may have been at an unapproved location" and instructed her to return, but she never returned; and (4) Bowman "was charged with one count of aggravated escape from custody."

At the sentencing that followed in October 2015, Bowman moved for a downward durational departure sentence and stipulated to her June 20, 2011, probation violation. The district court revoked Bowman's probation and granted Bowman a downward departure to 11 months in prison (down from the presumptive guideline sentences of 17-18-19 months) to be served consecutive to her 12-month sentence in her underlying forgery case.

*Jurisdiction*

Bowman's appeal brings the matter to us. She raises the same arguments asserted in her June 2015 motions to dismiss her probation revocation and the new charge of

5

aggravated escape from custody. She contends that the district court's sentence in her forgery case was illegal because there is no statutory authority allowing the court to impose a sentence beginning on a contingent, future date. She argues that a sentence must be certain and definite and have "a high degree of exactitude" and that her Kansas sentence for forgery lacked this exactitude because it had no specific beginning and, therefore, was illegal. Bowman concedes that a district court can impose a sentence consecutive to a sentence from another state but maintains that the district court did no such thing in this case. Instead, the district court imposed Bowman's sentence consecutive to her detainer, which Bowman contends is different than a sentence.

Bowman's jurisdiction argument raises an issue of law over which our review is unlimited. See *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015), *cert. denied* 136 S. Ct. 1364 (2016).

As we held in *State v. Torkelson*, 29 Kan. App. 2d 672, 675, 30 P.3d 320 (2001), *State v. McDaniel*, 20 Kan. App. 2d 883, 885, 893 P.2d 290 (1995), and, it is well within the district court's authority to order probation to run consecutive to a prison sentence. "Probation is not inherently inconsistent with consecutive sentences" and can be granted after a prison sentence. *McDaniel*, 20 Kan. App. 2d at 885. Thus, a defendant may serve a prison term in one case, followed by a term of probation in another case to be served upon completion of the prison term.

Regarding Bowman's claim that her sentence was illegal, a sentence must not be "''ambiguous with respect to the time and manner in which it is to be served."' [Citations omitted.]" *State v. Gray*, 303 Kan. 1011, 1014, 368 P.3d 1113 (2016). As noted in *State v. Chronister*, 21 Kan. App. 2d 589, 593, 903 P.2d 1345 (1995), K.S.A. 21-4608(h)—now K.S.A. 2016 Supp. 21-6606(h)—"allows the court to use its discretion in determining whether sentences should be served consecutive to or concurrent with sentences ordered

6

in other jurisdictions." Thus, the district court had the authority to order Bowman's Kansas sentence to be served upon completion of her Missouri sentence.

The rub, according to Bowman, is that the sentencing court used the term "detainer" rather than "sentence" in defining when Bowman was to begin serving her Kansas sentence. But the Interstate Agreement on Detainers forms filed with the Kansas court before Bowman's sentencing and the court's remarks, noted earlier, make clear that the court's reference to "detainer" refers to Bowman first completing her Missouri sentence.

> "She is here, as the Court is aware, on detainer out of the Missouri Department of Corrections that was filed in this case; however, she is to be paroled out of the Missouri Department of Corrections in August. So she should be able to be paroled out there and begin probation here.
> . . . .
> ". . . Probation is granted for a term of 18 months for intensive supervision by Community Corrections not to commence until the Missouri detainer has been fulfilled."

Bowman's probation was to begin as soon as she was released from prison in Missouri and not at some "indefinite time" as she contends. Bowman's sentence was not ambiguous, and she was legally sentenced. Thus, the district court had jurisdiction after December 22, 2008, to revoke Bowman's probation and impose her underlying sentence.

*Sufficiency of the Evidence*

Bowman claims there was insufficient evidence to convict her of aggravated escape from custody because she was not in lawful custody when she left the Residential Center. Her argument is predicated on the jurisdictional contentions raised in her first claim which lead her to conclude that the district court had no jurisdiction to send her to

the Residential Center in the first place. Thus, her leaving the Center was not an escape from custody.

In our review of this claim we examine the evidence in the light favoring the State to determine if, based upon that evidence, a rational factfinder could have found Bowman guilty beyond a reasonable doubt. See *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). Based on our earlier conclusion that the district court had jurisdiction to order Bowman to serve her probation term at the Residential Center, it is clear that a rational factfinder could find that she is guilty of aggravated escape from custody. There was substantial evidence to support Bowman's conviction.

Affirmed.